No. 48,638

GERALD BRAUN, *Appellant,* v. ROBERT PEPPER, JUDY PEPPER, d/b/a
PEPPER'S I.G.A., *Appellees.*

(578 P.2d 695)

Opinion filed May 6, 1978.

*Ward E. Loyd,* of Calihan, Green, Calihan, and Loyd, of Garden City, argued the cause, and was on the brief for the appellant.

*James W. Wallace,* of Wallace, Brantley, and Shirley, of Scott City, was on the brief for the appellees.

The opinion of the court was delivered by

PRAGER, J.: This is an action brought by the plaintiff, Gerald Braun, to recover the balance due on a note and to foreclose a security agreement which were executed in connection with the sale of a grocery business. At the time the petition was filed, the plaintiff-creditor obtained the *ex parte* appointment of a receiver. The receiver was in the possession of the grocery business for three days. Then, on application of the defendants, the receivership was dissolved by the district court. The defendants, Robert and Judy Pepper, filed, along with their answer, a counterclaim seeking to recover damages on the theory of wrongful appointment of a receiver. After a trial to the jury, the district court awarded the defendants damages for a wrongful receivership. The plaintiff Braun has appealed.

The essential facts in the case are as follows: In January of

1970, plaintiff Braun contracted to sell a grocery store to defendants Pepper. The purchase price was secured in part by the store's inventory. The contract provided that the Peppers should not permit the inventory of the store to fall below $18,000 for a period as long as two weeks. In the event it did so, the seller Braun could, at his option, declare the agreement null and void, consider the full amount of purchase price due, and take or regain possession of the property. In addition, under the agreement the Peppers agreed to furnish copies of the inventory of merchandise every three months and to furnish copies of weekly sales and purchases. The Peppers took possession and operated the grocery store. For a period of time they purchased grocery items from the Fleming Company. Apparently a dispute arose between the Peppers and the Fleming Company. The Peppers then began to purchase grocery items from other sources. The Peppers supplied to Braun quarterly inventories and statements of weekly sales and purchases. The plaintiff did not know that the defendants were securing merchandise from sources other than the Fleming Company. He assumed that the inventory was declining and became concerned about his security for the Peppers' debt. Plaintiff Braun then consulted counsel and filed this action. The petition requested that a receiver be appointed *ex parte.* The district court conducted a hearing at which evidence was presented. On April 8, 1971, the court appointed a receiver, requiring the plaintiff to furnish a bond for the receiver pursuant to K.S.A. 60-1302 and also to furnish a bond for himself under K.S.A. 60-1304. Bonds were furnished and the receiver, Paul O. Dart, took possession of the grocery store on April 9, 1971. On April 12, 1971, on motion of the Peppers, the order appointing the receiver was set aside and the defendants Pepper reassumed possession of the store. Thereafter, prior to trial, the grocery store burned. The debt of plaintiff Braun was paid out of the insurance proceeds, except for the sum of $1,000 plus interest which was due under the Peppers' note. The only issue remaining to be tried was the right of the Peppers to recover from Braun on their counterclaim seeking damages for the wrongful appointment of the receiver.

The jury was submitted certain special questions stating issues of fact to be determined. Based upon the jury's findings of fact, the district court entered judgment in favor of the Peppers on their counterclaim. In so doing, the district court found as matters

of fact that, on the date of the appointment of the receiver, the inventory of the grocery store exceeded $18,000; that plaintiff did not have information from a reliable source that the defendants were threatening to dispose of the inventory; but that the plaintiff Braun had information available to him upon which he relied which would cause a reasonably prudent man to believe that the inventory of the store was below the contract minimum of $18,000. The district court sustained the jury's award of damages to the Peppers on the theory that a receiver had wrongfully been appointed. The plaintiff Braun has appealed to this court contending that the district court erroneously determined certain questions of law and that the evidence did not support the verdict of the jury and certain findings of fact made by the trial court.

The first issue raised by the plaintiff on appeal is that the trial court erred in failing to hold as a matter of law that there can be no recovery on a theory of wrongful appointment of a receiver unless the appointment of the receiver was obtained with malice and without probable cause. Plaintiff argues that it is not sufficient for the debtor to show that the receivership was ultimately terminated and the property restored to the possession of the debtor. Stated simply, it is the position of the creditor Braun that an action by a debtor to recover damages for the wrongful appointment of a receiver is essentially an action for malicious prosecution and that the same rules which govern liability apply in both actions. A determination of this issue requires us to consider carefully the nature of an action for malicious prosecution and to compare it with an action for the wrongful appointment of a receiver.

An action for malicious prosecution may arise after a person has been charged with a crime and the criminal prosecution is terminated in favor of the defendant. The defendant, at that point, may become a plaintiff and bring an action for malicious prosecution against the person who instigated the criminal prosecution. To maintain successfully an action for malicious prosecution, the plaintiff must prove that the defendant initiated the criminal proceeding of which complaint is made, that the defendant in so doing acted without probable cause and with malice, and that the proceeding terminated in favor of the plaintiff. (*Stohr v. Donahue,* 215 Kan. 528, 527 P.2d 983 [1974]; *Thompson v. General Finance Co., Inc.,* 205 Kan. 76, 468 P.2d

269 [1970]; *Messinger v. Fulton,* 173 Kan. 851, 252 P.2d 904 [1953]; *Haines v. Railway Co.,* 108 Kan. 360, 195 Pac. 592 [1921].) In this state, damages may also be recovered for the malicious prosecution of a *civil* suit. The basic elements of the cause of action are the same as those in an action for malicious prosecution of a criminal action. (*Jackson & Scherer, Inc. v. Washburn,* 209 Kan. 321, 496 P.2d 1358 [1972]; *Ahring v. White,* 156 Kan. 60, 131 P.2d 699 [1942].)

The plaintiff Braun maintains that an action for the wrongful appointment of a receiver is, in effect, an action for malicious prosecution of a civil action and that liability can attach only where the person initiating and procuring the receivership acted without probable cause. In taking this position, the plaintiff Braun relies upon the finding of the trial court that Braun had information available to him at the time the receiver was appointed upon which he relied which would cause a reasonably prudent man to believe that the inventory of the store had dropped below the $18,000 minimum.

There are cases in other jurisdictions which hold that an action for wrongful receivership is identical with an action for malicious prosecution of a civil action. The only state which has adopted a pure malicious prosecution approach to an action for wrongful receivership is Wisconsin. (*Luby v. Bennett,* 111 Wis. 613, 87 N.W. 804 [1901].) Other jurisdictions take this approach where the action is not brought upon the bond which has been provided in the receivership proceeding. A majority of the jurisdictions take what has been described as the "strict liability approach." Under the strict liability approach, once a court has determined that the original order appointing a receiver was wrongful, the person obtaining the receivership is considered a trespasser *ab initio* and it is not necessary for the injured party to show that the appointment was procured maliciously or without probable cause. (*McKinney v. Nayberger, et al.,* 138 Or. 203, 2 P.2d 1111, *reh. den.* 138 Or. 216, 6 P.2d 228 [1931]; *K.C. Oil Co. v. Harvest Oil & Gas Co.,* 80 Okla. 61, 194 Pac. 228 [1920]; *Cecil v. Cecil's Exors. and Trustees,* 188 Ky. 700, 223 S.W. 1092 [1920]; *Strum v. Blair,* 182 Ill. App. 413 [1913]; *Thornton-Thomas Co. v. Bretherton, et al.,* 32 Mont. 80, 80 Pac. 10 [1905]; *Haverly v. Elliott,* 39 Neb. 201, 57 N.W. 1010 [1894].)

The Kansas cases on the subject do not clearly determine the

issue presented here. There is, however, language in the Kansas cases involving receiverships and other provisional remedies which support the conclusion that it is not necessary to prove malice or probable cause in order for an injured party to recover damages for the wrongful appointment of a receiver. Before considering the Kansas receivership cases, it would be helpful to analyze the action for wrongful appointment of a receiver and to compare it with the usual types of actions brought for malicious prosecution of a civil action. It appears to us that there is a sound basis for distinguishing the two types of actions. The usual case of malicious prosecution of a civil action is based on the mere filing of the action where the debtor's possession of his property is not disturbed. In the typical wrongful receivership case, the injured party has been divested of possession of his property and prevented from using the same.

By statute, the legislature has provided for certain provisional remedies which may be utilized by a creditor for the purpose of enforcing or satisfying a debt upon which the primary cause of action is based. Examples of provisional remedies are attachment (K.S.A. 60-701, *et seq.*), garnishment (K.S.A. 60-714, *et seq.*), and receivership (K.S.A. 60-1301, *et seq.*). In each of these statutory provisional remedies the legislature has provided special protections to the debtor. In each instance, the pertinent Kansas statute either makes mandatory or authorizes the trial court to require a bond to be provided by the creditor in order to protect the debtor who may suffer damages as the result of the wrongful use of the provisional remedy by the creditor.

Where an attachment is wrongfully issued, an action for damages is provided in this state. In such an action, this court has held that it is unnecessary for the plaintiff to allege a want of probable cause for the suing out of the attachment. In *M'Laughlin v. Davis,* 14 Kan. (2d ed.) *168 (1875), the court stated:

". . . A party is entitled to an attachment only when certain facts exist, not when there is probable cause to believe that they exist. . . . If they do not exist, the attachment is wrongfully issued, and the party causing it to issue is liable for all the damages actually sustained. . . ." (p. *169.)

The same rule applies where an action is brought to recover damages for a wrongful garnishment. In *Jacobs v. Greening,* 109 Kan. 674, 202 Pac. 72, (1921), it was held that an action for wrongful attachment, not brought upon the bond, may be main-

tained without malice being pleaded or proved and that the same rule applies to a wrongful garnishment. In an action to recover damages for wrongful attachment and garnishment it was pointed out that, even where the absence of probable cause is requisite for recovery, "probable cause" must exist as a *fact* and not merely in the mind of the attaching creditor. (*Lukens v. First National Bank*, 151 Kan. 937, 101 P.2d 914 [1940].) In *Lukens* this court stated that it has followed the more modern rule which does not recognize probable cause as a sufficient defense to a claim for actual damages for wrongful garnishment. It is important to note that the court emphasized that liability on the garnishment bond given under G.S. 1935, 60-942, was based simply on "wrongful" garnishment and not on garnishment that was malicious or without probable cause. It is clear from these cases that, in an action for wrongful attachment or wrongful garnishment, it is not necessary for the injured party to prove malice or absence of probable cause. Why should a different rule apply in a case of wrongful receivership where the receivership is obtained *ex parte*?

We believe that there is equal, if not more, justification for imposing the same liability for the wrongful *ex parte* appointment of a receiver as there is in cases involving wrongful attachments or garnishments. Protection for a debtor is especially justified where a creditor obtains the appointment of a receiver *ex parte* without an opportunity for the debtor to be heard. It is well-settled that the appointment of a receiver, *ex parte* and without notice, to take over one's property is one of the most drastic actions known to law or equity. (*Redfearn v. Bronson Mutual Telephone Co.,* 189 Kan. 105, 367 P.2d 76 [1961].) In *Browning v. Blair,* 169 Kan. 139, 145, 218 P.2d 233, the court stated that the power to appoint a receiver is limited almost exclusively to cases where it is necessary in order to prevent fraud, to save the subject of litigation from material injury, or to rescue it from threatened destruction. It is not properly exercised in any case where there is no fraud or imminent danger of the property sought to be reached being lost, injured, diminished in value, destroyed, wasted, or removed from the jurisdiction. In the opinion in *Browning* the court uses the following language:

". . . It is only in cases of the greatest emergency that courts are warranted in tying up a business or property by appointing a receiver to take it from the control of the owners; neither should a receiver be appointed unless it is absolutely necessary and there is no other adequate remedy. A receiver should never be

appointed where it may do irreparable injury to others or where greater injury is likely to result from such appointment than if none were made. (*Feess v. Bank,* 84 Kan. 828, 115 Pac. 563.)" (p. 145.)

Under the Kansas statutes a receiver may be appointed without notice to the adverse party, though generally this court has taken the position that "such a thing should not be done." (*Elwood v. National Bank,* 41 Kan. 475, 21 Pac. 673 [1889].) The subject of receivers may be found in K.S.A. 60-1301 through 60-1305. K.S.A. 60-1301 authorizes a judge or justice to appoint a receiver and sets forth his duties. K.S.A. 60-1302 requires the receiver, before entering upon his duties, to execute an oath and a bond "with sufficient sureties to such persons on such conditions and in such sum as the judge may direct." K.S.A. 60-1303 provides that the receiver shall perform such acts concerning the property or business as the judge may authorize.

K.S.A. 60-1304 authorizes the court to require the petitioner or applicant seeking the appointment of a receiver to provide a bond in addition to the receiver's bond required by 60-1302. It should also be noted that under 60-1304 the debtor must be provided a notice and an opportunity to be heard *unless* the judge shall, after the introduction of evidence and a record of the proceeding is made, make a finding that immediate and irreparable injury is likely to result.

We have concluded that the same rule should apply in an action to recover damages for the wrongful *ex parte* appointment of a receiver as in an action to recover damages for a wrongful attachment or garnishment. In an action for wrongful receivership, damages are recoverable if the facts, as established at the trial or hearing, show that a receivership was not justified. It is not necessary for the debtor to show that the appointment of the receiver was obtained maliciously or without probable cause. Such a holding is consistent with the past decisions of this court pertaining to actions for the wrongful *ex parte* appointment of a receiver.

In *Bowman v. Hazen,* 69 Kan. 682, 77 Pac. 589 (1904), it was held that where the appointment of a receiver was absolutely void, those who procured the appointment were trespassers *ab initio* and were liable as such to the parties suffering loss as the result of the wrongful appointment. In *Petersime Incubator Co. v. Ferguson,* 143 Kan. 151, 53 P.2d 505 (1936), a creditor brought an

action in replevin to recover the possession of three incubators from the defendants, who were operating a chicken hatchery. The plaintiff secured the *ex parte* appointment of a receiver to take charge of the business without giving defendants an opportunity to be heard. The defendants filed a counterclaim seeking to recover damages for wrongful receivership. The creditor, in defense of the counterclaim, argued that the gist of the counterclaim was an action for malicious prosecution and since there was no evidence of malice the action must fall. In the opinion the court stated that the counterclaim was not brought for malicious prosecution, but was for wrongfully procuring the appointment of a receiver. The supreme court pointed out that the trial court had found that the plaintiff had no just grounds for obtaining an *ex parte* appointment of a receiver and there was ample evidence to sustain this finding. The court clearly rejected the argument that an action for wrongfully procuring the appointment of a receiver is the same as an action for malicious prosecution. As pointed out in *Lukens v. First National Bank,* supra, "probable cause" must exist as a *fact* and not merely in the mind of the attaching creditor. In other words, if the debtor, who has been injured by the wrongful *ex parte* appointment of a receiver, can show that the true facts did not justify the appointment of a receiver and the receivership is ultimately dissolved, then the injured debtor is entitled to recover damages resulting from the wrongful receivership even though the creditor in procuring the appointment of the receiver acted without malice and on facts which reasonably appeared to him to constitute probable cause.

*First Federal Savings & Loan Ass'n v. Moulds,* 202 Kan. 557, 451 P.2d 215 (1969), was an action to foreclose a mortgage on real property. The defendant-debtor defaulted. On motion of the plaintiff-creditor, a receiver was appointed and authorized to collect the rents from the property during the redemption period. Thereafter, the debtor filed a motion asking that the receivership be set aside and sought damages for wrongfully procuring the receivership. The district court upheld the appointment of the receiver and denied damages. On appeal, we set aside the receivership order, holding that the receiver was wrongfully appointed. We also held that the trial court erred in refusing to assess damages against the creditor for wrongfully procuring the receivership. We stated that one who causes or procures the

wrongful appointment of a receiver is liable for the resultant damages, including attorney fees of counsel employed to procure vacation of the order appointing the receiver. There is nothing in the opinion which requires the aggrieved party to prove malice or want of probable cause.

In the present case the plaintiff Braun obtained the *ex parte* appointment of a receiver. The Peppers were not afforded an opportunity to present evidence or to make a showing that the inventory of the grocery store was not in danger of being concealed or taken away or that any fraud was about to be committed on the plaintiff Braun. On the basis of the authorities cited above, we have concluded that, in order for the Peppers to recover damages on the theory of wrongful appointment of a receiver, it was not necessary for them to plead or prove as a part of their cause of action that the plaintiff Braun, in obtaining the appointment of the receiver *ex parte,* acted maliciously or without probable cause. We find no error in the trial court's conclusion of law so holding.

The plaintiff's second point on appeal is that it was error for the district court to rule that advice of counsel is not a complete defense in an action to recover damages for wrongful receivership. This point is essentially the same point just discussed above. Counsel for the plaintiff has not cited for us any cases which make advice of counsel a defense in an action to recover damages for the wrongful appointment of a receiver, nor have we found any. We find no error in the ruling of the trial court in this regard.

The last point raised by plaintiff on the appeal is that the finding of the jury and the trial court that the inventory of merchandise at the grocery store was above the contract minimum for the two or three weeks preceding April 8, 1971, is not supported by substantial competent evidence. We have carefully considered the evidentiary record in this case and find the evidence on this issue to be conflicting. We note that, immediately upon taking possession of the grocery store, the receiver took an inventory which disclosed that the value of the merchandise on hand was in excess of $25,000, well above the $18,000 minimum required by contract. Suffice it to say, this testimony, along with other testimony in the case, was sufficient to support the finding of the jury and of the trial court that the inventory at all times

exceeded the contract minimum. The evidence does not establish that a receivership was necessary to prevent fraud or to save the subject of the litigation from injury or destruction. The issues presented in the case were essentially issues of fact to be determined from the testimony of the witnesses. We find no justification for setting aside any of the findings of fact or conclusions of law made by the trial court.

The judgment of the district court is affirmed.

FROMME, J., not participating.