NOT DESIGNATED FOR PUBLICATION

No. 112,799

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JOHN J. SIGG,
*Appellant*,

v.

MARK T. EMERT and FAGAN, EMERT & DAVIS, L.L.C.,
*Appellees*.

MEMORANDUM OPINION

Appeal from Allen District Court; ROGER L. GOSSARD, judge. Opinion filed November 25, 2015. Reversed and remanded.

*Linus A. Thuston*, of Chanute, for appellant.

*Brennan P. Fagan*, of Fagan Emert & Davis, L.L.C., of Lawrence, for appellees.

Before LEBEN, P.J., MCANANY and BUSER, JJ.

*Per Curiam*: The case underlying this appeal is a wrongful garnishment claim brought by John J. Sigg. The garnishment was part of the efforts of his former wife, Linda, to collect on a judgment entered in her favor against John to equalize the division of marital property in the divorce proceedings that ended their marriage. John claims that Linda's lawyer, Mark T. Emert and his firm, Fagan, Emert & Davis, L.L.C. (collectively Emert), wrongfully pursued the garnishment of John's funds on deposit at the Great Southern Bank when Emert knew that the money in the account constituted exempt Social Security benefits. The district court granted summary judgment in favor of Emert and against John. In this appeal, John seeks our de novo review of Emert's summary judgment motion.

1

The parties are well acquainted with the extensive history of this dispute that found its source in various business dealings between John, Linda, and their son, Mitchell. We need not recount them here. Because the matter was brought to a head with Emert's summary judgment motion, we will confine our analysis to the uncontroverted facts related to that motion.

*Summary Judgment Standards*

The standards for granting summary judgment are well known. They are predicated upon a showing that there is no genuine issue as to any material fact and that based upon those undisputed facts the movant is entitled to judgment as a matter of law. K.S.A. 2014 Supp. 60-256. In considering a motion for summary judgment, the court must resolve all facts and inferences reasonably drawn from the evidence in favor of the party against whom summary judgment is sought. *Bergstrom v. Noah*, 266 Kan. 847, 871, 974 P.2d 531 (1999).

This does not mean the party against whom summary judgment is sought may sit idly by. A party opposing summary judgment must present evidence showing that a material fact is disputed. 266 Kan. at 871. A plaintiff opposing a defendant's motion for summary judgment "must actively come forward with something of evidentiary value to establish a disputed material fact." *Hare v. Wendler*, 263 Kan. 434, 444, 949 P.2d 1141 (1997). Evidentiary value is defined as a document or testimony that is probative of the proponent's position on the issue of material fact. 263 Kan. at 444.

If reasonable minds could arrive at different conclusions based on the evidence, summary judgment must be denied. *Bergstrom*, 266 Kan. at 871-72. On appeal, our consideration of the summary judgment motion is de novo. *Nelson v. Nelson*, 288 Kan. 570, 578, 205 P.3d 715 (2009).

*Emert's Statement of Uncontroverted Facts*

Emert sets forth the following statement of uncontroverted facts supported by citations to the record from his affidavit on file and the transcript of proceedings before the district court. We paraphrase:

A.  Emert was hired by Linda to collect her judgment against John.

    John: Uncontroverted.

B.  In June 2011, Emert requested that an order of garnishment be issued for John's funds being held by the Piqua State Bank in Iola.

    John: Uncontroverted.

C.  A garnishment order was issued, and the Bank filed its answer with the clerk of the district court on June 17, 2011.

    John: Uncontroverted.

D.  The Bank's answer indicated it was holding John's nonwage funds in excess of $46,000.

    John: Uncontroverted.

E.  John objected to the Bank's answer and requested a hearing.

    John: Uncontroverted.

F.  At the hearing regarding John's objection to the garnishment, the court determined that John's funds on deposit at Piqua State Bank were exempt from garnishment because they were derived from Social Security benefits.

   John:  Uncontroverted.

G.  In September 2011, John appeared in court for an examination in aid of execution.

   John:  Uncontroverted.

H.  At that hearing, John testified that he had no bank account other than the one holding his Social Security benefits.

   John:  Uncontroverted.

I.  In January 2012, Emert was informed that John had another bank account at the Great Southern Bank.

   John:  The account at Great Southern Bank was not opened until after the court ruled that the funds at Piqua State Bank were exempt from garnishment. John did not testify at the hearing in aid of execution as to the name of the bank where his Social Security benefits were deposited.

   Because John's response does not address Emert's claimed fact and does not controvert it, we will treat Emert's assertion as uncontroverted.

4

J.  Emert requested another order of garnishment which was issued and served on Great Southern Bank, which answered that John had an account there with a balance in excess of $29,000.

John:  Uncontroverted.

K.  John's account at the Great Southern Bank was not the account that had previously been subject to a garnishment and was not the account John testified to regarding his Social Security benefits.

John:  Admits that the Great Southern Bank account was not the account subject to the previous garnishment. But John asserts that the funds in the Great Southern Bank were the same funds subject to the previous garnishment because John closed the Piqua State Bank account and transferred the funds to the new account at Great Southern Bank.

John cites from the record his unverified petition which in itself is insufficient. See *U.S.D. No. 232 v. CWD Investments*, 288 Kan. 536, 556-57, 559, 205 P.3d 1245 (2009). But because his response to Emert's motion is verified, we will treat this as the equivalent of an affidavit for purposes of controverting this claimed fact.

L.  John did not object to the answer filed by Great Southern Bank as he had previously done with respect to the Piqua State Bank garnishment.

John:  Uncontroverted.

M. There being no objection to Great Southern Bank's answer and the statutory time for objecting having expired, the district court entered an Order to Pay and the funds from the Great Southern Bank were disbursed to Linda.

John: Uncontroverted.

*John's Claimed Additional Uncontroverted Facts*

In his verified response to Emert's motion, John asserts two additional claimed uncontroverted facts. First, he asserts that he contacted Emert upon being notified of the Great Southern Bank garnishment and told Emert that the Great Southern Bank funds were the same funds that had been on deposit at the Piqua State Bank.

Emert responds by denying this assertion, citing a second affidavit he filed in which he states that when John contacted him by phone their brief conversation related only to a business records subpoena. Emert further contends that this claimed fact is immaterial because John does not dispute that he received notice of the garnishment, does not contend that he filed any objection to Great Southern Bank's answer, and did not request a hearing on Great Southern Bank's answer within the 14 days required by K.S.A. 60-735(b). Thus, under Emert's theory, the only way to challenge the garnishment is by following the statutory procedure, and actual notice to Emert that the funds at the Great Southern Bank were exempt is of no effect.

We find it interesting that in his statement of uncontroverted facts, Emert did not allege that he provided John with the required statutory notice of the Great Southern Bank garnishment. But John saved Emert from this omission when, in the statement of his first additional uncontroverted fact, he states that "Plaintiff contacted Defendants upon being notified of the garnishment of the Great Southern Bank . . . ." So John has

6

conceded the issue of notice, even though the parties dispute the substance of the phone conversation that followed.

John's second claimed fact is that Emert issued a subpoena duces tecum to Great Southern Bank after the garnishment, and the bank provided records that confirmed that John's Social Security benefits were being deposited into his account at Great Southern Bank.

Emert responds by denying this assertion, again citing his second affidavit. According to Emert, the bank's records did not specify that the deposits into the account were from Social Security benefits.

*Judgment as a Matter of Law*

Resolution of this appeal turns on whether the statutory procedure for objecting to the garnishee's answer is the only way for preserving a wrongful garnishment claim. Emert does not premise his summary judgment motion on a contention that the funds taken in the Great Southern Bank garnishment were not Social Security proceeds. Rather, he relies on the doctrine of waiver as an absolute defense to John's claim. He contends that under K.S.A. 60-735(a) and (b), John was obligated to object to the garnishment of his funds held by the Great Southern Bank and to request a hearing in order to preserve a cause of action for wrongful garnishment.

K.S.A. 60-735 was enacted in 2002 and provides in part as follows:

"(a) Immediately following the time the order of garnishment is served on the garnishee, the party seeking the garnishment shall send a notice to the judgment debtor in any reasonable manner, notifying the judgment debtor:

7

(1) That a garnishment order has been issued against the judgment debtor and the effect of such order;

(2) of the judgment debtor's right to assert any claim of exemption allowed under the law with respect to a garnishment against property other than earnings . . .; and

(3) of the judgment debtor's right to a hearing on such claim or objection. The notice . . . shall contain a description of the exemptions that are applicable to garnishments and the procedure by which the judgment debtor can assert any claim of exemption.

"(b) If the judgment debtor requests a hearing to assert any claim of exemption, the request shall be filed no later than 10 days following the date the notice is served on the judgment debtor."

In reading the plain language of the statute, the only compulsory action by the judgment debtor is requesting a hearing within 10 days *if* the judgment debtor decides to exercise the right to challenge the garnishment in the garnishment proceedings.

The cause of action for wrongful garnishment has been recognized in Kansas from at least 1875. See *McLaughlin v. Davis*, 14 Kan. 168 (1875). In our present action, the only actual damages claimed by John is the amount taken from his account at Great Southern Bank in the garnishment plus interest. There is a contested issue of fact whether John advised Emert by phone after receiving notice of the garnishment that the funds in the Great Southern Bank account were exempt. But in a case such as this, under Emert's theory there could never be a cause of action for wrongful garnishment because John would have had to file a formal objection to the garnishment and litigate in the garnishment proceedings his exemption claim. Under this theory, these garnishment provisions are not a shield for the judgment debtor but a sword to defeat a later wrongful garnishment claim.

The predecessor to the notice provision found in our current statute was K.S.A. 1999 Supp. 60-728, which required notice to the judgment debtor of the garnishment and allowed the judgment debtor to controvert any statements in the garnishee's answer. The legislative history of that statute suggests that its notice requirements were designed to be a shield for the judgment debtor, not a sword to be used against the judgment debtor. One of the concerns at the time was that the notice requirement of the existing garnishment statute ran afoul of federal court decisions which held that procedural due process demanded that the judgment debtor be given notice of what exemptions may apply to the property taken in the garnishment. These decisions included the Tenth Circuit Court of Appeals decision in *Aacen v. San Juan County Sheriff's Dept.*, 944 F.2d 691 (10th Cir. 1991). K.S.A. 1999 Supp. 60-728 was designed to correct this.

The predecessor to the current statutory provision for the judgment debtor's challenge to a garnishment was K.S.A. 1999 Supp. 60-718(c), which provided in part: "Within 10 days after filing of the answer the plaintiff or the defendant or both of them may reply thereto controverting any statements in the answer." Earlier statutes, going back to 1889, use similar language that the judgment debtor "may" assert that property held by the garnishee is exempt from execution.

According to John, he gave Emert verbal notice that the funds in the garnishment were exempt. But Emert argues that this is not enough to preserve the cause of action. We find no statutory or case authority that supports this position.

John cites *McLaughlin*, 14 Kan. 168; *Lukens v. First National Bank*, 151 Kan. 937, 101 P.2d 914 (1940); and *Braun v. Pepper*, 224 Kan. 56, 578 P.2d 695 (1978), for the proposition that it makes no difference whether the judgment debtor had probable cause to believe the funds were subject to garnishment if it ultimately is determined that they were not. Emert argues that these cases predate the enactment of K.S.A. 60-735 in

9

2002. But, as noted earlier, there were comparable statutes as early as 1889. There is no language in the statute or case authority requiring this interpretation.

Emert argues that John waived his right to bring this action. Waiver is the voluntary and intentional relinquishment of a known right and the expression of an intention not to insist upon what the law affords. See *Prather v. Colorado Oil & Gas Corp.,* 218 Kan. 111, 117, 542 P.2d 297 (1975); *Jones v. Jones,* 215 Kan. 102, 116, 523 P.2d 743, *cert. denied* 419 U.S. 1032 (1974). Waiver must be unequivocally expressed either by a distinct act or by inaction inconsistent with the intention to claim a right. *Patrons Mut. Ins. Ass'n v. Union Gas System, Inc.*, 250 Kan. 722, 725-26, 830 P.2d 35 (1992). John asserts that he informed Emert that the funds were exempt. Emert denies this. Because we find no statutory or case authority that precludes a cause of action for wrongful garnishment when the plaintiff informs the judgment debtor that the garnishment was wrongful but did not challenge the garnishment in the garnishment proceedings itself, there remains a genuine issue of material fact that precludes summary judgment in favor of Emert.

Reversed and remanded for further proceedings.