**In re KIDS CREEK PARTNERS, L.P., Debtor.**

**Bankruptcy No. 94 B 23947.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

May 19, 2000.

David R. Herzog, Chicago, IL, for Movant or Plaintiff.

Janet S. Baer, Bryan R. Sup, Chicago, IL, Neal L. Wolf, Los Angeles, CA, for Respondent or Defendant

David A. Belofsky, Douglas M. Belofsky, Steve Shamash, Chicago, IL, Trustees.

### MEMORANDUM OPINION ON MOTION FOR LEAVE TO SUE TRUSTEE AND SPECIAL COUNSEL

JACK B. SCHMETTERER,
Bankruptcy Judge.

This dispute arises from an agreement between David R. Herzog ("Trustee"), as Chapter 7 Trustee for the estate of Kids Creek Partners, L.P. ("Debtor"), and Leighton Holdings, Ltd. ("Leighton"), and from the subsequent filing by Trustee of an adversary proceeding against Leighton and Cecil McNab ("McNab") (an unsecured creditor and principal of Leighton).

Without obtaining prior leave of this Court, Leighton and McNab ("Plaintiffs") filed suit against Trustee and Trustee's counsel, Belofsky & Belofsky, P.C. ("Trustee's Special Counsel for the Leighton litigation") in the United States District Court for this District, alleging willful and deliberate breaches of fiduciary duty by those Defendants and malicious prosecution of their adversary suit against Leighton and McNab. Plaintiffs subsequently brought the present motion for leave of this Court to continue with their District Court action against Trustee and

Special Counsel. For reasons discussed below, is has been found that Plaintiffs did not plead a prima facie case against Trustee and Special Counsel, and that policy considerations militate against exercise of discretion to permit such suit. Therefore, Plaintiffs' motion for leave to proceed in their suit against Trustee and Special Counsel is by separate order denied and they will be ordered to dismiss that unpermitted suit.

### Relevant History

The extensive history leading up to the present motion has been reported in several opinions issued herein, and by reviewing District Judges and a panel of the Seventh Circuit Court of Appeals throughout a litany of litigation.[1]

From the history set forth in prior rulings, only those facts relevant to Plaintiffs motion for leave to proceed in their suit need be repeated here.

On December 5, 1994, an involuntary petition for bankruptcy relief was filed against Debtor under Chapter 7 of the United States Bankruptcy Code, Title 11 U.S.C. The order for relief was entered December 30, 1994. When the bankruptcy petition was filed, Debtor was involved in negotiations for sale of property to which Debtor held an option to purchase. At that time, to secure Debtor's obligations, Leighton was a lender that held a security interest in Debtor's rights in that proper-

ty. Debtor was then in default to Leighton. On December 12, 1994, Munson Health Care and Grand Traverse County ("Purchasers"), the parties with whom Debtor was contracting to sell the land encumbered by Leighton's mortgage, moved for appointment of an interim trustee who could consummate the land sale contract. That motion was granted and David R. Herzog was appointed as interim trustee (later the Chapter 7 Trustee).

To complete the sale agreement, Purchasers demanded that Debtor obtain a release of Leighton's security interest in the property. Trustee negotiated a release of Leighton's lien on the property in exchange for (1) a lien on proceeds of the sale; and (2) Trustee's consent to an agreed order providing a superpriority administrative claim for any and all costs incurred by Leighton in the event that Trustee brought a contemplated adversary proceeding against Leighton in which Leighton prevailed. The agreed order memorializing these terms was entered by this court on December 30, 1994.

On February 15, 1995, Trustee filed an adversary complaint on behalf of the estate suing Leighton for equitable subordination and lender liability. On August 21, 1995, appointment of Special Counsel was approved herein for litigation of the adversary proceeding against Leighton.

---

1. *Herzog v. Leighton Holdings, Ltd. (In re Kids Creek Partners, L.P.)*, 200 B.R. 996 (Bankr. N.D.Ill.1996) (denying motion for summary judgment); *Herzog v. Leighton Holdings, Ltd. (In re Kids Creek Partners, L.P.)*, 1997 WL 97122 (Bankr.N.D.Ill.1997) (memorandum opinion on facts deemed established for trial); *In re Kids Creek Partners, L.P.*, 210 B.R. 547 (Bankr.N.D.Ill.1997) (holding Leighton's pre-petition security interest did not attach to proceeds from post-petition sale of debtor's real property), *motion to alter or amend denied*, 1997 Bankr.LEXIS 215 (1997), *aff'd*, 1997 WL 627652 (N.D.Ill.1997); *Herzog v. Leighton Holdings, Ltd. (In re Kids Creek Partners, L.P.)*, 212 B.R. 898 (Bankr.N.D.Ill.1997) (granting judgment on partial Findings in fa-

vor of Leighton); *In re Kids Creek Partners, L.P.*, 220 B.R. 963 (Bankr.N.D.Ill.1998) (awarding superpriority claim to Leighton), *aff'd*, 239 B.R. 497 (N.D.Ill.1999); *In re Kids Creek Partners, L.P.*, 219 B.R. 1020 (Bankr. N.D.Ill.1998) (awarding administrative claim to court reporter and requiring special counsel to disgorge $ 2,500.00 in interim fees in order to be distributed pro rata to court reporter and other administrative creditors), *aff'd*, 233 B.R. 409 (N.D.Ill.1999); *In re Kids Creek Partners, L.P.*, 236 B.R. 871 (Bankr. N.D.Ill.1999) (granting Leighton's motion to disgorge funds from the trustee); *In the Matter of Kids Creek Partners, L.P.*, 200 F.3d 1070 (7th Cir.2000) (affirming the disgorgement of fees and the order allowing superpriority).

Leighton obtained judgment in its favor on October 1, 1997. *Herzog v. Leighton Holdings (In re Kids Creek Partners, L.P.)*, 212 B.R. 898 (Bankr.N.D.Ill.1997). Soon, thereafter, on October 14, 1997, Trustee filed a notice of appeal from this court's decision in the adversary proceeding. A portion of the appeal was dismissed by District Court order on March 17, 1999 and Leighton obtained affirmance in its favor on remaining appeal issues, September 9, 1999. *Herzog v. Leighton Holdings, Ltd.*, 239 B.R. 497 (N.D.Ill.1999).

On September 10, 1997, Leighton filed its superpriority administrative claim. Despite the agreed order, Trustee opposed Leighton's claim. On May 18, 1998, this Court entered a judgment order allowing Leighton's superpriority claim and providing for its immediate payment. Trustee appealed first to the District Court and then to the Seventh Federal Circuit Court of Appeals, losing at each level. *Herzog v. Leighton Holdings, Ltd. (In re Kids Creek Partners, L.P.)*, 233 B.R. 409 (N.D.Ill. 1999); *In re Kids Creek Partners, L.P.*, 200 F.3d 1070 (7th Cir.2000).

Plaintiffs now seek leave to proceed in their pending District Court Case No. 99 C 6438 against Trustee and Special Counsel to recover from them personally (not from the estate) for asserted willful and deliberate breaches of fiduciary duties, and malicious prosecution.

Jurisdiction over this matter lies under 28 U.S.C. § 1334, and the matter is referred here by Local District Court General Rule 2.33(A). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(F), and venue lies under 28 U.S.C. § 1409.

### Applicable Standards

■ Under the Barton Doctrine[2], as applied by recent Seventh Circuit authority to bankruptcy matters, a party must seek leave of the bankruptcy court to file suit against a bankruptcy trustee seeking

personal recovery from that person. *In re Linton*, 136 F.3d 544, 545 (7th Cir.1998). Before leave to sue a trustee can be obtained, the claimant must be able to plead a prima facie case against the trustee. *In re Berry Publishing Services, Inc.*, 231 B.R. 676 (Bankr.N.D.Ill.1999) *citing In re Kashani*, 190 B.R. 875 (9th Cir. BAP 1995).

■ As an officer of the court, a trustee's exposure to personal liability is limited. A trustee "cannot be held personally liable unless he acted outside the scope of his authority as trustee, i.e. *ultra vires*, or breached a fiduciary duty that he owed as the trustee to some claimant fee." *See In re Schechter*, 195 B.R. 380, 384 (N.D.Ill.1996); and *In re Weisser Eyecare, Inc.*, 245 B.R. 844 (Bankr.N.D.Ill.2000), and cases cited. In this Circuit, a trustee's personal liability for a breach of fiduciary duty extends only to "a willful and deliberate violation of his fiduciary duties." *In re Chicago Pacific Corp.*, 773 F.2d 909, 915 (7th Cir.1985) *citing Mosser v. Darrow*, 341 U.S. 267, 272, 71 S.Ct. 680, 95 L.Ed. 927 (1951).

### Discussion

■ After filing their District Court suit, Plaintiffs have brought the present motion for leave to proceed with that suit against Trustee and Special Counsel. Prospective plaintiffs should obtain leave of the court in which the trustee was appointed before they may sue a bankruptcy trustee and his or her counsel in a non-appointing forum. *See In re Linton*, 136 F.3d 544, 545 (7th Cir.1998) and *In re Weisser Eyecare, Inc.*, 245 B.R. 844 (Bankr.N.D.Ill.2000). Plaintiffs failed to petition this court for leave to sue prior to filing their pending suit, and filed the present motion after Trustee had moved the District Court to dismiss Plaintiffs' complaint. Their counsel explained that they risked tolling of applicable limitations, but that hardly justifies failure to apply here

---

**2.** The doctrine set forth in *Barton v. Barbour*, 104 U.S. 126, 26 L.Ed. 672 (1881), required a party to obtain permission of the appointing court before bringing suit against a receiver.

first in time for consideration before the tolling. Failure to follow the prescribed procedure requiring advance permission is itself grounds to deny the present motion. However, several other grounds are found to warrant denial, and it is appropriate to discuss them.

■ Because bankruptcy trustees serve an important function as officers of the court in the administration of bankruptcy cases, they are afforded limited personal immunity when operating pursuant to their authority and absolute personal immunity if operating directly in obedience to a court order. *See Boullion v. McClanahan*, 639 F.2d 213 (5th Cir.1981); *Ziegler v. Pitney*, 139 F.2d 595 (2nd Cir.1943). These Defendants were acting pursuant to their authority to pursue the litigation and defenses complained of, but were never ordered and required by this Court to do so. Therefore, they can assert only limited personal immunity under recognized standards now to be discussed.

■ A Seventh Circuit panel has held that a trustee may be "personally liable only for a willful and deliberate violation of his fiduciary duties," *In re Chicago Pacific Corp.*, 773 F.2d 909, 915 (7th Cir.1985) *citing Mosser v. Darrow*, 341 U.S. 267, 272, 71 S.Ct. 680, 95 L.Ed. 927 (1951). Further, a trustee will generally not be held personally liable for mistakes in judgment where discretion is allowed to the trustee. *In re Markos Gurnee Partnership*, 182 B.R. 211, 219 (Bkrtcy.N.D.Ill. 1995) *citing In re Hutchinson*, 5 F.3d 750, 753 (4th Cir.1993).

■ Trustees are further protected from undue personal liability by the "leave to sue" requirement. One compelling justification for imposition of both limited immunity and the leave-to-sue requirement is that otherwise

"trusteeship will become a more irksome duty, and so it will be harder for courts to find competent people to appoint as trustees. Trustees will have to pay higher malpractice premiums and this

will make the administration of the bankruptcy laws more expensive." *In re Linton*, 136 F.3d at 545.

The leave-to-sue requirement also protects trustees from excessive interference in the execution of their duties resulting from need to defend themselves in lawsuits filed by parties upset by their treatment in the trustee's bankruptcy proceeding, though this is less of a concern in the present case because Trustee has few remaining duties.

■ There are further compelling justifications for requiring a party to demonstrate ability to plead a prima facie case of willful and deliberate breach of fiduciary duty or ultra vires act before leave may be obtained to sue a trustee personally. Because of the usual financial difficulties of debtors that precipitate a trustee's involvement, given the opportunity to do so parties in interest would likely choose to assert whatever claims they could against the solvent trustee individually, rather than being limited to a fractional distribution from bankruptcy estates.

If debtors, creditors, defendants in adversary proceedings, and other parties to a bankruptcy proceeding could sue the trustee in state court for damages arising out of the conduct of the proceeding, that court would have the practical power to turn bankruptcy losers into bankruptcy winners, and vice versa. A creditor who had gotten nothing in the bankruptcy proceeding might sue the trustee for negligence in failing to maximize the assets available to creditors, or to the particular creditor. A debtor who had failed to obtain a discharge might through a suit against the trustee obtain the funds necessary to pay the debt that had not been discharged.

*In re Linton*, 136 F.3d 544, 546 (7th Cir. 1998). Were a trustee "burdened with having to defend against suits by litigants disappointed by his actions on the court's behalf, his work for the court will be impeded." *Id.* at 545. Such potential risks and liability would present tremendous disincentives for qualified individuals to

serve as trustees. Thus, the use of a stringent standard, the willful and deliberate breach requirement, strikes an appropriate balance limiting the occasions in which a trustee may be personally liable, but allowing injured parties to recover from the trustee when the trustee intentionally acts in clear contravention of duty.

### Willful and Deliberate Breach of Fiduciary Duties Not Pleaded in Count I

In Counts I and II of their complaint, Plaintiffs allege that Trustee and Special Counsel willfully and deliberately breached fiduciary duties owed to the estate and its creditors. To determine whether such a breach of fiduciary duties has been pleaded, we must consider what fiduciary duties were allegedly implicated; whether these fiduciary duties were allegedly breached; and whether such breach was alleged to be willful and deliberate.

■ A Chapter 7 bankruptcy trustee, in his or her official capacity, owes fiduciary duties to the debtor's estate and its creditors. *In re Chicago Art Glass,* 155 B.R. 180, 187 (Bankr.N.D.Ill.1993) *citing In re Melenyzer* 140 B.R. 143 (Bankr. W.D.Tex.1992). *See* 11 U.S.C. § 704. It is less clear as to the extent these duties are owed by Special Counsel for Trustee, but for purposes of this discussion it will be assumed that fiduciary duties of any counsel for Trustee to the estate and its creditors are the same as those due from the Trustee.

■ A Chapter 7 trustee's general fiduciary duties are set forth in 11 U.S.C. § 704. The primary duty of a trustee set forth in § 704 is to "collect and reduce to money the property of the estate for which such trustee serves and close such estate as expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. § 704(1). Courts have interpreted the term "parties in interest" broadly, finding it generally to include "all persons whose pecuniary interests are directly affected by the bankruptcy proceedings."

*In re Hutchinson,* 5 F.3d at 756. Among a trustee's further fiduciary duties, as Plaintiffs point out, is the duty to "carefully preserve the assets of the Debtor's estate in the Trustee's possession ... from deterioration or dissipation." Plaintiffs' Complaint, ¶ 49. *In re Chicago Art Glass,* 155 B.R. at 187. This is the fiduciary duty that Plaintiffs seek to implicate by allegations in Counts I and II of their Complaint.

■ In Count I, Plaintiffs allege that "Trustee and Special Counsel willfully and deliberately breached their fiduciary duty to the Creditors by filing [the adversary proceeding] without having done adequate investigation to determine if they had legitimate claims against Plaintiffs." Plaintiffs' complaint, ¶ 50. Plaintiffs also allege a second similar breach resulting from Trustee's opposition to Plaintiffs' summary judgment motion in the adversary proceeding. They complain that Trustee's response filed by his counsel contained assertions of unsubstantiated facts and the "submission of affidavits by witnesses who were unreliable and untruthful." Plaintiffs' complaint, ¶ 51. Plaintiffs further allege that failure of Trustee and his counsel to terminate the proceeding and subsequent appeals from the adverse judgment constituted a third breach of fiduciary duty. Plaintiffs' complaint, ¶ 53–54.

Plaintiffs claim that, through these acts, Trustee depleted assets of the estate and imposed great costs to both sides resulting from the litigation and appeals, constituting a breach of fiduciary duties which was both willful and deliberate. While there may be some questions raised as to what fiduciary duties Trustee owes to Plaintiff Leighton as an opposing party in the adversary proceeding, Plaintiff McNab is an unsecured creditor of Debtor to whom a fiduciary duty to preserve the assets of the estate was unquestionably due.

Despite Plaintiffs' summary allegation of a willful and deliberate breach of fiduciary duty, they fail to articulate facts which

demonstrate that the alleged acts constituted breaches of fiduciary duties or that there were willful and deliberate breaches of those duties. Plaintiffs' allegations in Count I refer not to willful acts but to omissions and tactical judgments on the part of Trustee and his Special Counsel. While Plaintiffs' allegations may support an inference that Trustee and Special Counsel exercised poor judgment and that Trustee's actions or failure to take actions ultimately had an adverse effect on the estate, the exercise of poor judgment is not akin to a breach of fiduciary duties. Further, Plaintiffs have certainly failed to allege facts demonstrating that, if Defendants crossed some line where poor judgment turns into breach of fiduciary duties, such actions were willful and deliberate. Plaintiffs allege that Trustee made unsupported factual assertions and depended on unreliable witnesses, but do not allege that Trustee knew that particular statements were unreliable or false, or that Defendants intentionally failed to conduct adequate investigation. The facts alleged are therefore not sufficient to allege a prima facie case of a willful and deliberate breach of fiduciary duties. Consequently, Plaintiffs may not proceed under Count I.

### Breach of Fiduciary Duty Not Pleaded in Count II

As noted, Trustee and Special Counsel owe a fiduciary duty to Debtor and to creditors of Debtor's estate to preserve and protect assets of the estate. In Count II of Plaintiffs' Complaint, they allege that Trustee owed a fiduciary duty to Debtor's estate and its creditors to exercise discretion prudently in determining which matters to pursue and which actions to contest or appeal in Debtor's bankruptcy case. Plaintiffs' Complaint, ¶ 58. Plaintiffs further state that Trustee's opposition to Plaintiffs' superpriority claim was pursued in bad faith. Plaintiffs' Complaint, ¶ 63.

While Trustee's actions in opposing Leighton's claim did have the effect of depleting estate assets in order to pay Special Counsel to litigate, his attempts to obtain a settlement in the adversary case and to defend against the administrative claim, had they been successful, could have produced assets of the estate available to unsecured creditors. While Leighton benefitted from Trustee's failure to defeat the superpriority administrative claim, had Trustee succeeded in that effort Plaintiff McNab would likely have partially benefitted along with other creditors by receiving some distribution from the bankruptcy estate.

It is true that, when Trustee entered into the court-approved agreement with Leighton, he was "in a box" from which he could escape only by making that deal with Leighton. He did just that in order to consummate the property sale. Plaintiffs' Complaint, ¶ 18. While Trustee had consented to entry here of an order providing for Leighton's contingent superpriority administrative claim that ultimately scooped up all remaining estate assets, he subsequently opposed payment of that claim, asserting that such a claim to which he had agreed was not authorized by the Bankruptcy Code. While § 105(a) of the Bankruptcy Code empowers this Court to enter any orders needed to carry out responsibilities for which jurisdiction otherwise lies, any such order must be consistent with provisions of the Code. *See In re Fesco Plastics Corp., Inc.,* 996 F.2d 152, 154 (7th Cir.1993). Trustee argued that the order he consented to was not authorized by law.

If Leighton's claim were not authorized by the Bankruptcy Code, the Trustee could argue that such order could not be authorized by Court order even though he invited and agreed to it. Even if embarrassed by his agreement, Trustee would reasonably be expected to oppose any claim not authorized by law, and would perhaps be compelled to do so under his duty to the estate and its creditors to object to improper claims under Bankruptcy Code § 704(5). Section 704(5) provides

that "The trustee shall ... if a purpose would be served, examine proofs of claims and object to the allowance of any claim that was improper." 11 U.S.C. § 704(5). Despite his consent to the agreed order, if not authorized by Bankruptcy Code a claim would be improper. Had Trustee failed to object to the superpriority claim, it is possible that another creditor of Debtor's estate might for that very reason have sought leave to sue Trustee for breaching his duty set forth under § 704(5).

As stated above, had Trustee succeeded in his opposition to Plaintiffs' fee petition and claim, the assets available to other creditors of Debtor's estate would likely have been increased significantly. While Trustee is asserted to have gambled assets of the estate and lost, that judgment does not rise to the level of a willful and deliberate breach of fiduciary duties. To hold a trustee personally liable for making an unwise litigation decision, especially when based on pre-bankruptcy events which gave rise to the litigation issue, would make trusteeship an onerous, risky, and costly task which few would voluntarily undertake.

The requirement that breach of fiduciary duty be willful and deliberate and the leave-to-sue requirement are safeguards against such risk, although trustee and attorney's fees for poor or unsuccessful work may be limited or disgorged if that is appropriate. *In re Kids Creek Partners, L.P.*, 236 B.R. 871 (Bankr.N.D.Ill. 1999). Apart from that risk to compensation, Plaintiffs now seek to impose additional personal liability on Trustee and his counsel for objecting to the Leighton superpriority claim which was to consume remaining assets in the estate. Absent a pleading showing that Trustee did so in willful and deliberate breach of their fiduciary duties, it would be improper to grant leave to proceed with the suit. While Plaintiffs suggest in their Complaint that Trustee motives were suspect, that speculation is insufficient to plead a willful and deliberate breach of fiduciary duties.

Plaintiffs have therefore failed to allege facts demonstrating that Trustee's opposition to Plaintiffs' superpriority claim and fee petition constituted a willful and deliberate breach of fiduciary duty, and they will not be granted leave to proceed with Count II.

### Malicious Prosecution Not Alleged in Counts III and IV

 Counts III and IV of Plaintiffs' complaint assert claims for malicious prosecution. Actions for malicious prosecution have been limited in Illinois, so as to encourage a policy of open access to the courts. *Serfecz v. Jewel Food Stores,* 67 F.3d 591, 602 (7th Cir.1995). To successfully plead a claim of malicious prosecution, a Plaintiff must allege the following: (1) that defendant brought the underlying suit maliciously; (2) that defendant brought the underlying suit without probable cause; (3) that the former action was terminated in the Plaintiff's favor; and (4) some "special injury" or special damage beyond the usual expense, time or annoyance in defending a lawsuit was suffered. *Cult Awareness Network v. Church of Scientology International,* 177 Ill.2d 267, 271–272, 226 Ill.Dec. 604, 685 N.E.2d 1347 (1997). Plaintiffs must plead facts showing each of those required elements. Absence of any one of these elements will bar recovery for malicious prosecution. *Misselhorn v. Doyle,* 257 Ill.App.3d 983, 986, 195 Ill.Dec. 881, 629 N.E.2d 189, 192 (1994).

 In Count III, Plaintiffs alleged that Trustee and Special Counsel failed to make an adequate investigation of factual circumstances surrounding Leighton's liens and Debtor's business failure before bringing the Adversary Proceeding, and that Defendants also failed to prove many facts asserted in opposition to Plaintiffs' summary judgment motion in the adversary case. Plaintiffs' complaint, ¶¶ 68, 71. According to Plaintiffs, this demonstrates that Trustee and Special Counsel lacked sufficient facts to substantiate their cause

of action and suggests that they "never intended to go to trial on the case." Plaintiffs' Complaint, ¶ 71. Plaintiffs further allege that the proceeding was instituted as a means to extort a settlement from Plaintiffs, and claim resulting damages which include amounts due on its superpriority administrative claim, lost interest on the amount held in a letter of credit, and Plaintiff McNab's lost dividend as an unsecured creditor of Debtor's estate. Plaintiffs' Complaint, ¶ 73.

Plaintiffs' assertion in Count III that Trustee's filing of the adversary proceeding constituted malicious prosecution must fail.[3]

Their claim of malicious prosecution is doomed by inability to allege sufficient "special injury" to sustain the claim. To properly allege "special injury," Plaintiffs must plead a "special injury or special damage beyond the usual expense, time or annoyance in defending a lawsuit." *Serfecz*, 67 F.3d at 602. Under Illinois law, "special injury is usually 'identified with an arrest or seizure of property or some constructive taking or interference with the person or property.'" *Id.* Further, *Serfecz* found "allegations of loss of potential tenants, of institutional lending commitments, and of the earnings and appreciation of a building complex are inadequate to satisfy the special injury requirement." *Id.* at 603, *citing Assocs., Inc. v. Village of Northbrook*, 171 Ill.App.3d 115, 121 Ill. Dec. 71, 524 N.E.2d 1119, 1122 (1988).

Here, the fees and the costs of litigation and appeals and the unpaid amounts of the superpriority claim were expressly provided for by the agreed order entered by this Court to be paid by the estate if it lost the

contemplated suit against Leighton. Further, while costs associated with the letter of credit obtained were substantial, these costs are often incurred by litigants to similar disputes. As demonstrated in *Smith v. Michigan Buggy Co.*, 175 Ill. 619, 51 N.E. 569 (1898), "it has been the rule in Illinois for over a century that" the ordinary trouble and expense which arise from ordinary forms of legal controversy ... should be endured by the law-abiding citizen as one of the inevitable burdens which men must sustain under civil government. *Smith*, 175 Ill. at 629, 51 N.E. 569. Because most of the injuries claimed here consisted of those costs and expenses which naturally result from litigation, and such injuries were expressly provided for by the agreed order entered in this case, Plaintiffs cannot plead those to satisfy the requisite element of "special injury" for a claim of malicious prosecution. Even the claim for lost interest on estate funds do not qualify as in any way analogous to the property taking usually required. *See Serfecz, Id.* Plaintiffs are therefore denied leave to proceed with Count III of their complaint.

■ In Count IV, Plaintiffs allege that Trustee and Special Counsel's opposition to Plaintiffs' superpriority administrative claim and fee petition was "malicious and in extreme bad faith" and constitutes malicious prosecution on their part. Among the elements of malicious prosecution which Plaintiffs must plead is the requirement that Trustee and his counsel initiated and prosecuted some action maliciously. *Cult Awareness Network*, 177 Ill.2d at 271–272, 226 Ill.Dec. 604, 685 N.E.2d 1347.

---

**3.** The case may have been prematurely filed because an appeal is pending. Under Illinois precedent, a winning trial court ruling may not be enough until the appeal is won. "In either case the adjudication is a sufficient termination of the proceedings, unless an appeal is taken." *Cult Awareness Network*, 177 Ill.2d 267, 276, 226 Ill.Dec. 604, 685 N.E.2d 1347 (1997) *citing* Restatement (Second) of Torts § 674, comment j. (1977). Because there is still an appeal pending in the Seventh Circuit from District Court affirmance of judgment here, under that reading of Illinois precedent, it may be that Plaintiffs have not yet sufficiently obtained favorable termination, though the holding in *Cult Awareness* need not be read so narrowly. However, for reasons stated in the Opinion, no matter how that issue would be decided, a successful ruling on appeal would not be enough to warrant leave to sue.

Plaintiffs argue that, even though Plaintiffs brought the underlying proceeding and administrative claim, the Trustee and his counsel maliciously prosecuted their defense thereto. This argument has no merit. Plaintiffs cite no cases, and this court knows of none, which suggest that raising opposition to a claim could constitute malicious prosecution, even if hypothetically such were done in bad faith. Also, for reasons stated earlier, the Trustee might have been criticized by other creditors if he had not offered the claim.

Therefore, as a matter of law, Plaintiffs cannot establish a prima facie case of malicious prosecution with respect to Count IV of Plaintiffs' complaint and Plaintiffs will not be granted leave to proceed against Trustee and Special Counsel on that Count.

### Sanctions under Rule 9011

Finally, though not asserted by the Plaintiffs, it should be considered whether Trustee and Special Counsel could properly have been subject to sanctions brought under Fed. R. Bankr.P. 9011. The purpose for this *sua sponte* inquiry is neither to consider a basis for relief that has not been pleaded, nor to raise the question for possible allowance of sanctions. Rather, the question is whether Plaintiffs filed their suit because they might be time-barred from seeking sanctions under Rule 9011 F.R. Bankr.P. and initiated litigation to make up for their omission to bring a prompt motion under that Rule.

It has been alleged by Plaintiffs in their suit that Trustee and Special Counsel brought the adversary proceeding without conducting a reasonable investigation, that they opposed Plaintiffs' summary judgment motion with unsubstantiated facts and false testimony, and that they pursued meritless appeals. *See* Plaintiffs' Second Memorandum in support of Plaintiffs' motion for leave to proceed in their suit, p. 3. Those allegations as to pleadings filed in this Court, if true, might suggest possible

sanctionable violations of Rule 9011 by Trustee and his Special Counsel.

Motions for sanctions initiated by a party are currently subject to the "safe harbor amendment," set forth in Rule 9011(c)(1)(A), which provides that a party or attorney who files an allegedly offending pleading or petition is entitled to a notice period of 21 days to "cure" by withdrawing the offending pleading before sanctions under Rule 9011 may be sought or awarded. *Lane v. Lane (In re Lane )*, 1999 WL 423029 (Bankr.N.D.Ill.1999). The safe harbor rule did not apply here, however, because that amendment to Rule 9011 became effective December 1, 1997 (some years after the similar change to Rule 11 Fed.R.Civ.P. became effective), after judgment had been entered here on merits of the adversary case.

Prior to that amendment, former Rule 9011 contained no specific time limits for bringing a motion for sanctions. Rather, the standard at that time for filing Rule 9011 motions, as set forth in *Kaplan v. Zenner*, 956 F.2d 149 (7th Cir.1992), required that motions for sanctions be filed "as soon as practicable after discovery of a Rule 11 violation." *Kaplan, Id.* at 151. *See also In re Kaliana*, 207 B.R. 597, 603 (Bankr.N.D.Ill.1997). According to Plaintiffs' allegations, the grounds for any potential Rule 9011 motion first arose in 1995. It could therefore be argued that any motion for sanctions under former Rule 9011 if now brought by Plaintiffs would be untimely, though circumstances might be present that could defeat such an objection. *Divane v. Krull Elec. Co., Inc.*, 200 F.3d 1020 (7th Cir.1999).

Suits against trustees and their counsel should not be a substitute for Rule 9011, and indeed such lawsuits would usually impose an unnecessary and unwarranted burden in cases in which a meritorious Rule 9011 motion could be brought. Moreover, to any extent appeals to higher courts are asserted to be frivolous, as is asserted here, similar sanctions may be imposed by those higher courts. (Rule 11

Fed.R.Civ.P. as to District Court, and Rule 38 Fed.R.App.P.).

To the extent discretion lies in this Court in applying the leave-to-sue rule, in addition to reasons given earlier for denial, such discretion should be exercised in favor of encouraging parties to bring timely and pertinent Rule 9011 sanction motions instead of attempting to plead some imaginative but unlikely cause of action to obtain a sanction for pleading errors.

## CONCLUSION

Other issues argued by the parties need not be decided.

For the several reasons state above, Leighton's motion for leave to proceed in its suit against Trustee David Herzog and Special Counsel will by separate order be entirely denied, and they will be ordered to dismiss that suit and file no new or amended suit without prior leave of this Court.